06 Civ. 1946 (LAK) (THK)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALMA WIGGINS,

Plaintiff,

-against-

NEW YORK CITY DEPARTMENT OF CORRECTION;
THE CITY OF NEW YORK; DR. DOCA and JOAN
CODRINGTON, in their individual and official capacity,

Defendants.

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS

### MICHAEL A. CARDOZO
*Corporation Counsel of the City of New York*
Attorney for Defendants, The New York City Department of
Correction, The City of New York and Captain Joan
Codrington
100 Church Street, Room 2-138
New York, NY 10007-2601

*Of Counsel:* Carolyn Walker-Diallo
*Tel:* (212) 788-0868

NYCLIS No. 06LE000173

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................... iii

PRELIMINARY STATEMENT .............................................................. 1

STATEMENT OF FACTS .................................................................... 3

ARGUMENT ...................................................................................... 5

    POINT I .................................................................................... 5

        PLAINTIFF'S CHALLENGE TO THE DOC'S
        SICK LEAVE POLICY IS BARRED BY CLAIM
        PRECLUSION. .................................................................... 5

    POINT II ................................................................................... 8

        THE DOC'S SICK LEAVE POLICY IS
        CONSTITUTIONAL. ........................................................... 8

        A.  The DOC's sick leave policy is a valid neutral
            provision and does not unconstitutionally
            violate plaintiff's free exercise rights under the
            Constitution. ........................................................... 8

        B.  The DOC's sick leave policy is rationally
            related to a legitimate state interest and does
            not violate plaintiff's right to travel and to
            associate freely. ..................................................... 10

    POINT III ................................................................................. 13

        PLAINTIFF'S ALLEGATIONS ARE
        CONCLUSORY AND DO NOT ESTABLISH
        THAT THE DEFENDANTS CONSPIRED TO
        DISCRIMINATE AGAINST HER OR THAT THE
        DEFENDANTS DISCRIMINATED AND
        RETALIATED AGAINST HER. ............................................ 13

        A.  Disability Discrimination and Retaliation. ....................... 13

            i.     Plaintiff fails to establish that she is
                  disabled under the NYSHRL and the
                  NYCHRL. ....................................................... 14

**Page**

ii.    Plaintiff cannot establish that she can perform the essential functions of a correction officer........................................................15

iii.   Plaintiff cannot establish that she suffered an adverse employment action...............................16

iv.    Plaintiff fails to state a claim of retaliation against the defendants...........................................16

B.  Plaintiff fails to establish that defendants conspired to deprive her of her constitutional rights. ............................................................................... 17

C.  Dr. Duca and Captain Codrington should be dismissed from this case. ......................................... 18

D.  Aiding and Abetting Liability............................................. 19

POINT IV.............................................................................................21

PLAINTIFF'S        ALLEGATIONS        ARE INSUFFICIENT TO ESTABLISH A CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS. ........................................................................ 21

POINT V ...............................................................................................23

PLAINTIFF'S CLAIMS AGAINST THE DOC MUST BE DISMISSED BECAUSE THE DOC IS NOT A SUABLE ENTITY. ................................................. 23

CONCLUSION...................................................................................... 24

## TABLE OF AUTHORITIES

**Cases**                                                                    **Pages**

Allen v. McCurry,
    449 U.S. 90, 101 S. Ct. 411, 66 L. Ed. 2d 308 (1980) ..............................................5

American Telephone and Telegraph Co. v. New York City Dep't of
    Human Resources, et al.,
    736 F. Supp. 496 (S.D.N.Y. 1990) ...................................................................23

Bey v. Welsbach Elec.,
    38 Fed. Appx. 690 (2d Cir. 2002) ...................................................................13

Brink's Inc. v. City of New York,
    533 F. Supp. 1123 (S.D.N.Y. 1982)................................................................22

Burrell v. City University of New York,
    995 F. Supp. 398 (S.D.N.Y. 1998) .................................................................17

Chase Manhattan Bank, N.A. v. Celotex Corp.,
    56 F.3d 343 (2d Cir. 1995).................................................................................5

Cruz v. Coach Stores, Inc.,
    202 F.3d 560 (2d Cir. 2000)............................................................................14

Dove v. Fordham University,
    56 F. Supp. 2d 330 (S.D.N.Y. 1999),
    aff'd, 210 F.3d 354 (2d Cir. 2000)..................................................................16

Dunson v. Tri Maintenance & Contractors, Inc.,
    171 F. Supp. 2d 103 (E.D.N.Y. 2001) ...........................................................19

Employment Division, Dep't of Human Resources of Oregon v. Smith,
    494 U.S. 872, 110 S. Ct. 1595, 108 L. Ed. 2d 876 (1990)..........................8, 9

Gerzog v. London Fog Corp.,
    907 F. Supp. 590 (E.D.N.Y. 1995) ................................................................21

Howell v. New York Post Co., Inc.,
    81 N.Y.2d 115, 596 N.Y.S.2d 350 (1993) .....................................................21

Johnson v. Palma,
    931 F.2d 203 (2d Cir. 1991)...........................................................................14

King v. Town of Wallkill,
    302 F. Supp. 2d 279 (S.D.N.Y. 2004)............................................................15

**Cases**                                                                          **Pages**

Korenyi  v. Department of Sanitation,
    699 F. Supp. 388 (E.D.N.Y. 1988) ................................................................10, 11

Lamberson v. Six West Retail Acquisition, Inc.,
    122 F. Supp. 2d 502 (S.D.N.Y. 2000)......................................................................19

Lauer v. City of New York,
    240 A.D.2d 543 (2nd Dep't 1997),
    appeal denied, 91 N.Y.2d 807, 659 N.Y.S.2d 260 (1998).......................................21

Maharaj v. BankAmerica Corp,
    128 F.3d 94 (2d Cir. 1997)........................................................................................6

McEvoy v. Spencer,
    49 F. Supp. 2d 224 (S.D.N.Y. 1999)......................................................................17

McGann, v. Incorporated Village of Old Westbury,
    256 A.D.2d 556, 682 N.Y.S.2d 433 (2nd Dep't 1998) ...........................................10

Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.,
    7 F.3d 1085 (2d Cir. 1993).......................................................................................17

Mohamed v. Marriot International, Inc.,
    905 F. Supp. 141 (S.D.N.Y. 1995) .........................................................................13

Monahan v. New York City Dep't of Corrections,
    10 F. Supp. 2d 420 (S.D.N.Y. 1998)
    aff'd, 214 F.3d 275 (2d Cir. 2000)................................................1, 5, 6, 7, 9, 10, 11

Murphy v. American Home Products Corp.,
    58 N.Y.2d 293, 461 N.Y.S. 2d 232, 448 N.E.2d 86 (1983)....................................21

Nash v. Bowen,
    869 F.2d 675 (2d Cir. 1989)......................................................................................6

New Century Manufacturing v. Vacu-Products,
    No. 00 Civ. 00503, 2001 U.S. Dist. LEXIS 8212
    (S.D.N.Y. June 20, 2001).........................................................................................23

Matter of New York State Empl. Relations Board v Christ
    the King High School,
    90  N.Y.2d 244, 660 N.Y.S.2d 359, 682 N.E.2d 960 (1997)....................................9

**Cases**                                                                    **Pages**

O'Brien v. Suffolk County Dep't of Social Services,
   261 A.D.2d 477, 690 N.Y.S. 2d 121 (2nd Dep't 1999),
   appeal denied, 93 N.Y.2d 814, 697 N.Y.S. 2d 562, 719 N.E. 2d 923 (1999)..........................10

Ohare v. New York City Police Dep't,
   161 A.D.2d 487, 555 N.Y.S.2d 753 (1st Dep't 1990) ...........................................................16

Pimentel v. Citibank,
   811 N.Y.S.2d 381 (1st Dep't 2006) .................................................................................15

Rivera v. Rikers Island,
   No. 02 Civ. 1560, 2004 U.S. Dist. LEXIS 9833
   (S.D.N.Y. May 13, 2004).................................................................................................23

Seabrook v. City of New York, et al.,
   No. 99-9169, 2000 U.S. App. LEXIS 6218
   (2d Cir. Apr. 4, 2000).................................................................................................8, 9

Smith v. Local 819 I.B.T. Pension Plan,
   291 F.3d 236 (2d Cir. 2002)............................................................................................13

Sommer v. Dixon,
   709 F.2d 173 (2d Cir. 1983)............................................................................................17

Tomka v. Seiler Corp.,
   66 F.3d 1295 (2d Cir. 1995)............................................................................................19

United Brotherhood of Carpenters & Joiners of America v. Scott,
   463 U.S. 825, 103 S. Ct. 3352, 77 L. Ed 2d 1049 (1983)..........................................................17

United States v. International Brotherhood of Teamsters,
   905 F.2d 610 (2d Cir. 1990)..............................................................................................6

Wright v. Smith,
   21 F.3d 496 (2d Cir. 1994)..............................................................................................18

Yonkers Commission on Human Rights v. City of Yonkers,
   654 F. Supp. 544 (S.D.N.Y. 1987) ...................................................................................23

**Statutes**

42 U.S.C. § 1983 (2006) ................................................................................................2, 18

42 U.S.C. § 1985 (2006) ...........................................................................................2, 17, 18

**Pages**

42 U.S.C. § 1985(3) (2006) ............................................................................17

Fed. R. Civ. P. 12(a)(4)(A) (2006)...............................................................24

Fed. R. Civ. P. 12(b)(6) (2006) .......................................................................1

Fed. R. Civ. P. 17(b) (2006)...........................................................................23

N.Y.C. Admin. Code § 8-102(16)(a) (2006) .................................................14

N.Y.C. Admin. Code § 8-102(16)(b)(1) (2006)............................................15

New York City Charter ch. 17 § 396 ............................................................23

N.Y. Const. Art. I, § 3.............................................................................8, 9, 10

N.Y. Exec. Law § 292(21) (2006) .................................................................14

N.Y. Exec. Law § 296(6) (2006) .............................................................19, 20

N.Y.C. Admin. Code § 8-107(6) (2006) ..................................................19, 20

## PRELIMINARY STATEMENT

Pursuant to Federal Civil Procedure Rule 12(b)(6), defendants[1] submit this memorandum of law in support of their motion to dismiss the complaint in its entirety on the grounds that it is barred by claim preclusion and that it fails to state a claim against the defendants.  In the complaint, Alma Wiggins ("plaintiff") asserts various federal and state law claims against the defendants, the New York City Department of Correction (the "DOC"), the City of New York (the "City defendants"), Dr. Robert Duca and Captain Joan Codrington (the "individual defendants").  Plaintiff's claims alleging that the DOC's sick leave policy violates her religious rights, her right to travel and to associate freely, are barred by the doctrine of *res judicata*.  The Second Circuit held in <u>Monahan v. New York City Dep't of Corrections</u>, 214 F.3d 275 (2d Cir. 2000), that these claims were previously litigated by plaintiff's union, and that as a result, correction officers are in privity with the union and are barred from relitigating the same claims.

Even if this Court were to reach the merits of plaintiff's constitutional claims, these claims lack legal or factual merit.  First, the DOC's sick leave policy is constitutional because it is a valid neutral provision that only "incidentally burdens" plaintiffs free exercise rights.  Second, the sick leave policy is rationally related to a legitimate state interest and does not violate plaintiff's right to travel and to associate freely.  Therefore, plaintiff's claim that the sick leave policy violates her rights under the Federal and the New York State Constitutions is without merit and should be dismissed.

---

[1] Legal representation of defendant Dr. Robert Duca has not yet been determined.  However, all claims against Dr. Duca should be dismissed for the reasons set forth below.

Plaintiff's other federal law claims and state law claims must be dismissed because plaintiff's allegations are conclusory and fail to give the defendant's "fair notice" of the claims against them. Plaintiff alleges that the defendants discriminated and retaliated against her, and that the individual defendants aided and abetted in these alleged acts. However, plaintiff fails to state any facts to support these conclusory allegations. In addition, the complaint fails to allege any facts supporting her bare allegation that the defendants conspired to discriminate and/or retaliate against her. Nonetheless, plaintiff's conspiracy claim against the City defendants is barred by the intra-corporate conspiracy doctrine. Thus, plaintiff's 42 U.S.C. §§ 1983 and 1985, and plaintiff's State and City Human Rights law claims should be dismissed.

Furthermore, plaintiff's claim for intentional infliction of emotional distress must be dismissed because as a matter of public policy, plaintiff cannot assert such a claim against the City defendants. As to the individual defendants, plaintiff fails to allege extreme and outrageous conduct sufficient to establish such a claim against them.

Lastly, plaintiff's claims against the DOC should be dismissed because the DOC is not a suable entity.

## STATEMENT OF FACTS[2]

On or about November 14, 1996, plaintiff began working for the DOC as a correction officer. Compl. ¶ 10.    While at work on February 11, 2003, plaintiff injured her knee.  Compl. ¶ 11.  Although she was seen by a Health and Hospital Corporation doctor, plaintiff's knee injury was not serious and she was permitted to return to work.  Compl. ¶ 13-14. Plaintiff worked in her capacity as a correction officer for nearly eighteen months without incident.  However, on July 26, 2004, plaintiff experienced pain in her knee.  Compl. ¶ 15-16. Plaintiff contacted the Health Management Division ("HMD") to report in sick.  As of July 26, 2004, plaintiff has not resumed her duties as a correction officer.

From August 2004 to November 2004, plaintiff had several doctor appointments with HMD and was seen by Dr. Robert Duca.  Compl. ¶ 18-19.  During this time, plaintiff claims that Dr. Duca yelled at her and told her that he would have her "medically separated" from her job.  Id. at 19.  Although plaintiff claims that she submitted all of her medical documents to HMD, Dr. Duca did not see any medical documents in her file.  Id.

On or about February 3, 2005, plaintiff contacted Correction Assistance Response for Employees (C.A.R.E.), an agency of the DOC designed to aid and support correction officers. Compl. ¶ 25.  C.A.R.E. sent an employee named Ms. Castro to plaintiff's house to speak with her.  Compl. ¶ 27.  Captain Codrington also arrived to assist plaintiff.  Id.  While Ms. Castro and Captain Codrington were speaking with plaintiff, police officers also arrived at her home to assist plaintiff and offered to take plaintiff to the hospital for evaluation.  Id.  Plaintiff agreed.

---

[2]  For the purposes of this motion only, defendants assume that the material facts alleged in the complaint are true.

Ms. Castro and Captain Codrington accompanied plaintiff to the hospital where she was later released.  Compl. ¶¶ 28, 30.

From July 2004 to July 2005, plaintiff was out of work on medical leave.  While on medical leave, plaintiff was required to adhere to the DOC's sick leave policy.  The DOC's sick leave policy requires some correction officers on sick leave to stay at home but allows them to leave their home four hours a day to handle personal matters.  Correction officers are also allowed to leave their home at anytime for medical treatment.  Plaintiff claims that the DOC's sick leave policy is unconstitutional because it violates her religious rights, her right to travel and to associate freely.  Compl. ¶¶ 32-36.

Plaintiff was scheduled to return to work in July 2005.  However, instead of returning to her previous duties, plaintiff states that she requires a "non-running position" within the DOC.  Compl. ¶ 40.  Plaintiff does not allege that she officially requested a "non-running position" in the DOC nor does she allege that the DOC failed to accommodate her based on such a request.  Nonetheless, plaintiff claims that she has been discriminated and retaliated against based on her alleged knee injury.

Plaintiff commenced this action on or about March 13, 2006.

**ARGUMENT**

**POINT I**

**PLAINTIFF'S CHALLENGE TO THE DOC'S SICK LEAVE POLICY IS BARRED BY CLAIM PRECLUSION.**

In Monahan v. New York City Dep't of Corrections, 10 F. Supp.2d 420 (S.D.N.Y. 1998), aff'd, Monahan v. New York City Dep't of Corrections, 214 F.3d 275 (2d Cir. 2000), approximately 40 correction officers brought suit alleging that the DOC's sick leave policy violated their religious rights, their right to travel and to associate freely. Id. at 425-6. On appeal of the district court's dismissal of the case, the Second Circuit held that the "former suit by [Correction Officer Benevolent Association] president Norman Seabrook barred the subsequent relitigation of plaintiffs' claims" because their interests were adequately represented in the Seabrook[3] case. Monahan v. New York City Dep't of Corrections, 214 F.3d at 280. Similarly, the instant case is controlled by the Second Circuit's decision.

Under the doctrine of *res judicata* or claim preclusion, once a claim has been brought to a final conclusion, a party is precluded from litigating the same claim again. Allen v. McCurry, 449 U.S. 90, 101 S.Ct 411, 66 L.Ed 2d 308 (1980); Chase Manhattan Bank, N.A. v. Celotex Corp. 56 F.3d 343, 345 (2d Cir. 1995). "Simply put, the doctrine states that once a final judgment has been entered on the merits of a case, that judgment will bar any subsequent

---

[3] In Seabrook v. Jacobson, No. 95 Civ. 4194 (E.D.N.Y. Compl. dated Oct. 13, 1995), Norman Seabrook, as president of COBA, along with two correction officers, brought suit alleging that the DOC's sick leave policy violated correction officers' constitutional rights. The parties settled the suit. However, the sick leave policy was amended to include that some officers were required to remain in their residence at all times except for time out-of-resident authorized by HMD. Although correction officers could leave their home at any time to obtain medical treatment, all other personal business was to be conducting during a four hour block of time. This is the same policy that exists today.

litigation by the same parties or those in privity with them concerning 'the transaction, or series of connected transactions, out of which the [first] action arose.'" Maharaj v. BankAmerica Corp, 128 F.3d 94, 97 (2d Cir. 1997).  The res judicata doctrine applies when: (1) there exists adjudication on the merits in a prior lawsuit; (2) the prior lawsuit involved the party to be precluded or a party in privity with that party; and (3) the claims sought to be precluded were raised, or might have reasonably been raised in the prior lawsuit. Id.  Here, plaintiff is precluded from litigating that the DOC's sick leave policy violates her religious rights, her right to travel, and her right to associate freely because these claims were previously litigated by her union and were adjudicated on the merits.

 The settlement of the Seabrook action and the Second Circuit's decision in Monahan has res judicata effect on plaintiff's claims.  First, the Second Circuit has held in Monahan that these claims have previously been adjudicated on the merits.  Second, in his capacity as President of COBA, Norman Seabrook adequately represented the interests of all union members, which includes plaintiff.  See United States v. International Bhd. of Teamsters, 905 F.2d 610 (2d Cir. 1990) (holding that a union official was bound by terms of a disciplinary mechanism set in place by consent decree between the United States and the union, even though the official was not a party to original lawsuit nor a signatory to the consent decree); Nash v. Bowen, 869 F.2d 675 (2d Cir. 1989) (judgment rendered against association may serve as res judicata with respect to claims later asserted by members of that association.)

 Third, plaintiff's claims are identical to the claims raised in Seabrook and in Monahan.  In both cases, the plaintiffs alleged violations of their rights to travel, to freely associate, to vote, to practice religion and to exercise freedom of speech.  Plaintiff's allegations arise from the same occurrences and transactions that the plaintiffs in Seabrook and in Monahan

used to challenge the constitutionality of the sick leave policy.  It should be noted that the policy has not changed since the Seabrook settlement and the Second Circuit's decision in Monahan. The instant case is nothing more than an unfortunate attempt to seek a second bite at the proverbial apple, the exact type of lawsuit that is barred by *res judicata*.  Therefore, the claims herein must be dismissed.

## POINT II

## THE DOC'S SICK LEAVE POLICY IS CONSTITUTIONAL.

Even if plaintiff's claims were not barred by the doctrine of *res judicata*, her claims would nonetheless fail. The DOC's sick leave policy does not unconstitutionally violate plaintiff's free exercise rights because the policy only incidentally affects these rights. Furthermore, plaintiff's right to travel and to associate freely have not been unconstitutionally infringed upon because the sick leave policy serves a rational relationship to a legitimate government interest. Therefore, plaintiff's claims alleging a violation of her First and Fourteenth amendment rights must be dismissed.

**A.    The DOC's sick leave policy is a valid neutral provision and does not unconstitutionally violate plaintiff's free exercise rights under the Constitution.**

Plaintiff's allegations that the DOC's sick leave policy violates her religious rights, her right to travel and to associate freely are without merit. In general, "[i]t is not a violation of the Free Exercise Clause to enforce a generally applicable rule, policy, or statute that burdens a religious practice, provided the burden is not the object of the law but merely the 'incidental effect' of an otherwise valid neutral provision." Seabrook v. City of New York, et al., No. 99-9169, 2000 U.S. App. LEXIS 6218, at *3 (2d Cir. Apr. 4, 2000); see Employment Div., Dep't of Human Resources of Oregon v. Smith, 494 U.S. 872, 878-9, 110 S. Ct. 1595, 1599-1600, 108 L. Ed. 2d 876, 885-886 (1990).

In Seabrook, the plaintiffs challenged the DOC's directive that forbids female correction officers from wearing skirts while on duty. Plaintiffs alleged that by requiring them to wear pants in contravention of their religious faith, the directive violated the Free Exercise Clause of the First and Fourteenth Amendments to the United States Constitution and article I, section 3 of the New York State Constitution. The district court denied plaintiffs' request for an

injunction and plaintiffs appealed.  The Second Circuit held that the policy did not violate the plaintiffs' free exercise rights because it was a neutral policy and it did not bar any religious practice.  Id. at *2.  The court noted that the plaintiffs did not allege a discriminatory purpose for the directive.  The facts in Seabrook are analogous to the case at bar.

Here, plaintiff alleges that the DOC's sick leave policy prohibits her from practicing her beliefs as a Pentecostal because she is precluded from attending church services on Sunday mornings, and on Tuesday and Thursday evenings.  Compl.¶ 35.  Although she may have some restrictions, the purpose of the DOC's sick leave policy is not to foreclose on her or any other correction officers' free exercise rights but to ensure that correction officers do not abuse the sick leave policy.  See Monahan v. City of New York Dep't of Corrections, 10 F. Supp. 2d at 424 (stating that it is rational for a state employer to condition sick leave compensation on the employee remaining at home for most of the day.).  It is a general policy that is applied equally and is constitutional.  Therefore, since the policy does not on its face implicate plaintiff's free exercise rights and only incidentally burdens these rights, plaintiff's federal claims must fail.

Moreover, plaintiff's State constitutional claims must also fail.  The Smith test, enunciated in Employment Div., Dep't of Human Resources of Oregon, 494 U.S. 872 (1990), has also been adopted by New York State:

> The plaintiffs' claim that their right to free exercise of religion under N.Y. Constitution, article I, § 3 has been violated is without merit.  A generally applicable and otherwise valid enactment, which is not intended to regulate religious conduct or beliefs but which may incidentally burden the free exercise of religion, is not deemed to violate the First Amendment (see, Matter of New York State Empl. Relations Bd. v Christ the King High School, 90

N.Y.2d 244, 660 N.Y.S.2d 359, 682 N.E.2d 960 (1997)).

McGann, v. Incorporated Village of Old Westbury, 256 A.D.2d 556, 557, 682 N.Y.S.2d 433, 434 (2nd Dep't 1998); see also O'Brien v. Suffolk County Dep't of Social Services, 261 A.D. 2d 477, 478, 690 N.Y.S. 2d 121, 122 (2nd Dep't 1999), appeal denied, 93 N.Y.2d 814, 697 N.Y.S. 2d 562, 719 N.E.2d 923 (1999).  Thus, as explained above, because the DOC's sick leave policy is a generally applicable and otherwise valid regulation, it cannot be deemed to violate article I, section 3 of the New York State Constitution.  As such, plaintiffs' State constitutional claims must be dismissed.[4]

**B.    The DOC's sick leave policy is rationally related to a legitimate state interest and does not violate plaintiff's right to travel and to associate freely.**

Furthermore, plaintiff's claim that the policy infringes upon her right to travel and to associate freely is equally without merit.  In Monahan, the court held in the alternative that even if the constitutional claims were not barred by res judicata, the DOC's sick leave policy would survive a rational basis review.  10 F. Supp. 2d at 424-5.  The defendants in Monahan presented evidence that the sick leave policy "rationally serve[d] the legitimate state interests of verifying officers' illnesses and preventing malingering." Id. at 424.  The court held that the DOC's sick leave policy "serves a rational purpose on its face, and is neither so restrictive nor so lacking in standards for its implementation as to create an undue risk of inherently arbitrary operation." Id. at 425.  This is the same policy that is at issue in this case.  Similarly, in Korenyi

---

[4] Article I, § 3 of the New York State Constitution states, in relevant part:

The free exercise and enjoyment of religious profession and worship, without discrimination or preference, shall forever be allowed in this state to all mankind; . . .

v. Department of Sanitation, 699 F. Supp. 388 (E.D.N.Y. 1988), the court held that the Department of Sanitation's ("DOS") sick leave policy did not violate the plaintiff's right to travel and to associate freely.

In Korenyi, plaintiff, a public employee of the DOS, filed suit alleging that the DOS's sick leave policy was unconstitutional because it violated, among other things, his right to travel and to associate freely. The court held that there was a rational relationship between the sick leave policy and the legitimate interests that the DOS had against abuse of the sick leave policy. Id. at 394. The court reasoned that the "very fact of public employment necessarily limits an individual's ability to travel." Id. at 393.

Furthermore, the court noted that the DOS agreed to pay its sick employees as long as the *bona fides* of their claim of illness were established by the employee. Id. The court stated that although the hours when the sick employee must be at home are greater than the normal work day, the requirement was a rational way to protect against "goldbricking." Id. As to the plaintiff's claim that the policy violated his right to associate, the court held that there was no facial infringement on employees' personal freedom of association because the regulations did not interfere with an employee's ability to have friends or family visit them at home. Id. at 394-5.

Similarly, here, the DOC has a legitimate interest in assuring that correction officers do not abuse the sick leave policy. As the court stated in Monahan, the DOC has a rational basis for instituting its sick leave policy. 10 F. Supp. 2d at 425. Moreover, plaintiff's allegation that the DOC's sick leave policy unconstitutionally requires her to stay at home more hours than she actually worked is without merit, because as the court stated in Korenyi, it is a rational way to protect against "goldbricking." 699 F. Supp. at 393. Lastly, the DOC's sick leave

policy does not prevent correction officers, including plaintiff, from entertaining visitors at home at any time or from visiting friends and family during the daily four hour recreation time. Therefore, the DOC's sick leave policy does not violate plaintiff's right to travel and to associate freely under the Federal and New York State Constitutions.

**POINT III**

**PLAINTIFF'S ALLEGATIONS ARE CONCLUSORY AND DO NOT ESTABLISH THAT THE DEFENDANTS CONSPIRED TO DISCRIMINATE AGAINST HER OR THAT THE DEFENDANTS DISCRIMINATED AND RETALIATED AGAINST HER.**

The Second Circuit has held that "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." Bey v. Welsbach Elec., 38 Fed. Appx. 690, 693 (2d Cir. 2002) (citing Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002)). Even under liberal pleading standards of the Federal Rules, the Complaint here is deficient as to the claims set forth below.

**A.      Disability Discrimination and Retaliation.**

Plaintiff alleges that she is disabled under the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL"), and that the defendants discriminated and retaliated against her based on her alleged disability. Claims of disability discrimination under the NYSHRL and the NYCHRL are subject to the same analysis as claims under the Americans with Disabilities Act. See Mohamed v. Marriot Int'l, Inc., 905 F. Supp. 141, 156-57 (S.D.N.Y. 1995).

To establish disability discrimination under the NYSHRL and the NYCHRL, plaintiff must plead that she: (1) suffered from a disability; (2) is otherwise qualified to perform the essential functions of the job; and (3) suffered the alleged adverse employment actions because of the disability. To establish retaliation, plaintiff must demonstrate "participation in protected activity known to the defendant, an employment action disadvantaging the person engaged in the protected activity, and a causal connection between the protected activity and the

- 13 -

adverse employment action." See Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir. 2000) (citing Johnson v. Palma, 931 F.2d 203, 207 (2d Cir. 1991)).

Here, plaintiff cannot establish that she has a disability as defined by the NHYSRL and the NYCHRL. Even if she is disabled under the NYSHRL and the NYCHRL, plaintiff fails to establish that she can perform the essential functions of a correction officer or that she suffered an adverse employment action because of her alleged disability. Furthermore, she has not pled facts sufficient to show that she engaged in conducted protected by the State or City human rights law and that she suffered an adverse employment action as a result of that activity. Therefore, plaintiff's discrimination and retaliation claims must be dismissed.

    i.    **Plaintiff fails to establish that she is disabled under the NYSHRL and the NYCHRL.**

Under § 292(21) of the NYSHRL, a "Disability" is defined as: (a) a physical, mental or medical impairment resulting from anatomical, physiological or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques or (b) a record of such an impairment or (c) a condition regarded by others as such an impairment, provided, however, that in all provisions of this article dealing with employment, the term shall be limited to disabilities which do not prevent the complainant from performing in a reasonable manner the activities involved in the job or occupation sought or held." N.Y. Exec. Law § 292(21) (2006). The NYCHRL defines a disability as a "physical, medical, mental, psychological impairment or a history or record of such impairment. N.Y.C. Admin. Code § 8-102(16)(a) (2006). A "physical or medical impairment" is: an impairment of any system of the body; including but not limited to: the neurological system, the musculoskeletal system; the special sense organs and respiratory; including, but not limited to, speech organs; the cardiovascular system; the reproductive system;

the digestive and genitor-urinary systems; the hemic and lymphatic systems; the immunological

systems; the skin; and the endocrine system.  N.Y.C. Adm. Code § 8-102(16)(b)(1) (2006).

Plaintiff alleges that she suffered a knee injury at work on February 11, 2003, and

that on July 24, 2004, she was forced to stop working because of increased pain in the same

knee.  On the face of the complaint, plaintiff does not allege enough facts to show that she is

disabled under the NYSHRL or the NYCHRL.  The mere fact that she suffered a knee injury and

that she may have to undergo knee replacement surgery does not establish that she: (1) has an

anatomical, physiological or neurological condition that prevents a normal bodily function or

that is demonstrable by medically accepted or laboratory diagnostic techniques; or (2) that she

has an impairment to any system of the body.  As such, plaintiff has not established that she is

disabled under the NYSHRL or the NYCHRL.

ii.     **Plaintiff cannot establish that she can perform the essential functions
        of a correction officer.**

Assuming *arguendo* that plaintiff is disabled under the NYSHRL or the

NYCHRL, plaintiff has not pled that she is qualified to perform the essential functions of a

correction officer.  Plaintiff admits that her doctor advised her to not return to work and that she

would require a "non-running position".  Comp. ¶¶ 16, 40.  First, the DOC is not required to

provide "non-running positions" for correction officers who are unable to perform their duties.[5]

---

[5] To the extent that plaintiff claims that she should be exempted from her job as a correction
officer, it should be noted that "[a]n employer is not . . . obligated to create a new light-duty
position for a disabled employee or make permanent previously temporary light-duty positions."
King v. Town of Wallkill, 302 F. Supp. 2d 279, 291 (S.D.N.Y. 2004).  See Pimentel v. Citibank,
811 N.Y.S. 2d 381 (1st Dep't 2006) (employer not obligated to provide disabled employee with
accommodation that the employee requests or prefers nor is the employer obligated to retrain and
assign disabled employees to entirely different positions.)

Second, even if the DOC were to accommodate plaintiff, she would not be able to perform the duties of a correction officer.[6]

### iii.   Plaintiff cannot establish that she suffered an adverse employment action.

To the extent that plaintiff alleges that her placement on disability retirement was an adverse employment action, plaintiff's claim is without merit.  Plaintiff does not allege that she officially requested an accommodation or that the DOC denied her an accommodation. Plaintiff merely alleges that an unidentified person "told" her that the DOC did not accommodate knee replacements.  Compl. ¶ 40.  These allegations do not establish that plaintiff suffered an adverse employment action as a result of her disability.

### iv.   Plaintiff fails to state a claim of retaliation against the defendants.

The complaint is devoid of any facts demonstrating that the defendants retaliated against plaintiff.  First, plaintiff fails to allege what conduct she engaged in that was protected under the NYSHRL and the NYCHRL.  Second, plaintiff does not allege that she suffered an adverse employment action as a result of the protected activity.  In short, the complaint is deficient because plaintiff does not provide any indication as to how or when the alleged retaliation occurred.  As such, plaintiff's claim must be dismissed.

---

[6] To the extent that plaintiff is claiming that she cannot perform the duties of a correction officer, plaintiff's knee injury would not be considered a disability because it prevents her from performing the essential functions of her job.  See Ohare v. New York City Police Department, 161 A.D.2d 487, 555 N.Y.S. 2d 753 (1st Dep't 1990) (holding that a police officer's leg injury was not a disability under the State human rights law because it impaired his ability to perform the duties of a police officer.)

**B.**   **Plaintiff fails to establish that defendants conspired to deprive her of her constitutional rights.**

To the extent that plaintiff alleges a claim against defendants under 42 U.S.C. § 1985(3) (2006), plaintiff has not alleged sufficient facts to support such a claim. A conspiracy is defined as an "agreement between two or more individuals, where one individual acts in furtherance of the objective of the conspiracy, and each member has knowledge of the nature and scope of the agreement." Dove v. Fordham University, 56 F. Supp 2d 330, 337 (S.D.N.Y. 1999), aff'd, 210 F.3d 354 (2d Cir. 2000) (citing Burrell v. City University of New York, 995 F. Supp. 398, 414 (S.D.N.Y. 1998)).   To prevail on a § 1985(3) claim, a plaintiff must show that the defendants conspired and that the conspiracy was motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993) (citing United Brotherhood of Carpenters & Joiners of America v. Scott, 463 U.S. 825, 829, 103 S. Ct. 3352, 3356, 77 L.Ed 2d 1049, 1054 (1983). A "complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." Sommer v. Dixon, 709 F.2d 173, 175 (2d Cir. 1983).

In the instant matter, the complaint provides no basis, much less any facts, to support her claim that the City defendants' or the individual defendants' actions were part of an alleged conspiracy between and amongst the defendants to violate her constitutional rights.  In addition, plaintiff provides absolutely no basis as to how the defendants worked in concert. Plaintiff merely alleges that Dr. Duca accused her of faking her knee injury and that Captain Codrington told her neighbors that she was having personal problems.  Compl. ¶¶ 19, 31.  These allegations are insufficient to demonstrate a conspiracy under Section 1985 against the City defendants or the individual defendants.

Moreover, as a matter of law, plaintiff cannot establish a conspiracy amongst the defendants named in this action because they are part of a single entity. Officials of a single government entity, acting in their official capacities cannot conspire among themselves or with the entity within the meeting of § 1985. See McEvoy v. Spencer, 49 F. Supp. 2d 224, 226 (S.D.N.Y. 1999). Thus, all claims alleging that the defendants engaged in a conspiracy to deny plaintiff her constitutional and/or statutory rights must be dismissed.

**C.     Dr. Duca and Captain Codrington should be dismissed from this case.**

For liability to exist against an individual under § 1983, a defendant must be personally involved in the underlying conduct or events, in that he or she "subjects, or causes [the plaintiff] to be subjected" to an alleged constitutional violation. 42 U.S.C. § 1983 (2006). A defendant may be personally involved in a constitutional deprivation in a variety of ways including: (1) by directly participating in the challenged conduct; (2) as a supervisory official, by failing to remedy the wrong after having learned of it; (3) as a supervisory official, by creating or perpetuating a policy or custom under which unconstitutional practices occurred; or (4) as a supervisory official, through gross negligence in managing the subordinates who caused the unlawful condition or event. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994). Plaintiff has not demonstrated that Dr. Duca or Captain Codrington deprived her of her constitutional rights by any of the ways listed above.

Plaintiff alleges that Dr. Duca yelled at her and threatened to have her "medically separated" from her job. Comp. ¶ 19. Plaintiff also alleges that Captain Codrington told her neighbors that she was having "problems" and needed to be taken for a psychiatric evaluation. Comp. ¶ 31. These allegations are not sufficient to establish Dr. Duca's or Captain Codrington's direct participation in discriminating and/or retaliating against her. Plaintiff has not provided facts sufficient to show that the individual defendants participated in having an adverse

employment action rendered against her based on her alleged knee injury.  Furthermore, plaintiff has not demonstrated that the individual defendants knew that plaintiff engaged in conduct protected under the NYSHRL or the NYCHRL and that they participated in an adverse employment action.  Therefore, plaintiff's claims alleging that Dr. Duca and Captain Codrington participated in violating her constitutional rights must be dismissed.

**D.     Aiding and Abetting Liability.**

The NYSHRL provides that it shall be an unlawful discriminatory practice "for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so." N.Y. Exec. Law § 296(6) (2006).  The Second Circuit has held that the language of the statute imposes individual liability on "a defendant who actually participates in the conduct giving rise to a discrimination claim," irrespective of whether the individual possesses power to do more than carry out personnel decisions made by others.  Tomka v. Seiler Corp., 66 F.3d 1295, 1317 (2d Cir. 1995).  The same standards of analysis used to evaluate aiding and abetting claims under the NYSHRL apply to such claims under the NYCHRL because the language of the two laws is "virtually identical." Dunson v. Tri Maintenance & Contractors, Inc., 171 F. Supp. 2d 103, 113-114 (E.D.N.Y. 2001); N.Y.C. Admin. Code § 8-107(6) (2006); See Lamberson v. Six West Retail Acquisition, Inc., 122 F. Supp. 2d 502 (S.D.N.Y. 2000) (applying the aider and abettor standard set forth in Tomka to claims under the NYSHRL and the NYCHRL).

Here, plaintiff has failed to show that the defendants discriminated and retaliated against her.  Based on this failure alone, the aiding and abetting claims against the individual defendants should be dismissed.  Moreover, plaintiff also fails to allege any facts showing that Dr. Duca or Captain Codrington assisted the City defendants in allegedly discriminating against her.  Plaintiff alleges that Dr. Duca yelled at her, accused her of faking her illness, and threatened

to have her "medically separated." Compl. ¶ 19. Plaintiff further alleges that Captain Codrington arranged to have her sent to the hospital for psychiatric evaluation and that she told plaintiff's neighbors that plaintiff was having "problems." Compl. ¶ 31. These allegations do not show that the individual defendants assisted the City defendants in allegedly instituting an adverse employment action nor does it show how these actions aided and abetted an alleged discrimination and retaliation against her. As a result, plaintiff cannot establish aider and abettor liability for the individual defendants under Section 296(6) of the NYSHRL or Section 8-107(6) of the NYCHRL. Therefore, these claims must be dismissed.

## POINT IV

**PLAINTIFF'S ALLEGATIONS ARE INSUFFICIENT TO ESTABLISH A CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.**

Plaintiff cannot state a claim against the City defendants for intentional infliction of emotional distress because "[i]t is well settled that public policy bars claims sounding in intentional infliction of emotional distress against a governmental entity." Lauer v. City of New York, 240 A.D.2d 543, 544, 659 N.Y.S.2d 57, 58 (2nd Dep't 1997), appeal denied, 91 N.Y.2d 807, 669 N.Y.S.2d 260, 692 N.E.2d 129 (1998). To set forth such a claim against the individual defendants, plaintiff must allege and prove extreme and outrageous conduct which either intentionally or recklessly caused her severe emotional distress. See Howell v. New York Post Co., Inc., 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350, 353, 612 N.E.2d 699, 702 (1993). The Court of Appeals has held that the conduct in question must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Murphy v. American Home Prods. Corp., 58 N.Y.2d 293, 303, 461 N.Y.S. 2d 232, 236, 448 N.E. 2d 86, 91 (1983). Furthermore, "in the rare instances where the New York courts have found the complaint sufficient to state a claim for intentional infliction of emotional distress in the employment context, the claims have been accompanied by allegations of sex discrimination, and more significantly, battery." Gerzog v. London Fog Corp. 907 F. Supp. 590, 604 (E.D.N.Y. 1995).

In the instant matter, plaintiff alleges that she has suffered damages "[b]y reason of the defendants' willful tortuous acts, including intentional infliction of emotional distress, designed to both harass and intimidate" her. Compl. ¶ 51. However, plaintiff fails to allege that the individual defendants engaged in extreme and outrageous conduct with the intent to cause her

emotional stress.  All plaintiff alleges is that Dr. Duca yelled at her and that Captain Codrington embarrassed her in front of her neighbors.  These allegations, even if true, are insufficient to state a claim for intentional infliction of emotional distress.  See Brink's Inc. v. City of New York, 533 F. Supp. 1123 (S.D.N.Y. 1982) (demotion, harassment and verbal abuse insufficient to make out a claim for intentional infliction of emotional distress).  Therefore, plaintiff fails to allege an intentional infliction of emotional distress claim against the defendants and should be dismissed.

## POINT V

### PLAINTIFF'S CLAIMS AGAINST THE DOC MUST BE DISMISSED BECAUSE THE DOC IS NOT A SUABLE ENTITY.

Federal Civil Procedure Rule 17(b) states that the "capacity to sue or be sued shall be determined by the law of state in which the district court is held ...." See New Century Mfg. v. Vacu-Products, No. 00 Civ. 00503, 2001 U.S. Dist. LEXIS 8212, at *1 (S.D.N.Y. June 20, 2001); American Telephone and Telegraph Co. v. New York City Dep't of Human Resources, et al., 736 F.Supp. 496, 498 (S.D.N.Y. 1990); Yonkers Commission on Human Rights v. City of Yonkers, 654 F. Supp. 544, 551 (S.D.N.Y. 1987).   Under the explicit terms of the New York City Charter, all actions that allege violations of law against a Department of the City must be brought in the name of the City of New York, and not the Department.  See New York City Charter ch. 17 § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law").  There are no state or local laws allowing the DOC to be sued.  See Rivera v. Rikers Island, No. 02 Civ. 1560, 2004 U.S. Dist. LEXIS 9833, at *1 (S.D.N.Y. May 13, 2004) (providing that the New York City Department of Correction is not a suable entity).  Consequently, all claims against the DOC must be dismissed.

## CONCLUSION

For all of the above reasons, defendants respectfully request that the complaint be dismissed in its entirety, that the request for relief be denied in all respects, that the Clerk of the Court be directed to enter judgment for defendants and that defendants be granted such other and further relief as the Court deems just and proper.   In the event of denial by the Court of the Motion to Dismiss the Complaint, the undersigned respectfully reserves the right pursuant to Federal Civil Procedure Rule 12(a)(4)(A) to serve and file an Answer to the Complaint.

Dated:      New York, New York
            July 5, 2006

**MICHAEL A. CARDOZO**
Corporation Counsel of the City of New
York
Attorney for Defendants, The New York
City Department of Correction, The City of
New York and Captain Joan Codrington
100 Church Street, Room 2-138
New York, New York 10007
(212) 788-0868

By:      _Carolyn Walker-Diallo_
            Carolyn Walker-Diallo (CW 9022)
            Assistant Corporation Counsel

**WILLIAM S.J. FRAENKEL**
**CAROLYN WALKER-DIALLO,**
Of Counsel