UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

ALMA WIGGINS,

|                                                  |                                          |
| ------------------------------------------------ | ---------------------------------------- |
| Plaintiff,                                       | **CITY DEFENDANT'S LOCAL RULE 56.1 STATEMENT OF UNDISPUTED FACTS** |
| - against -                                      |                                          |
| NEW   YORK   CITY   DEPARTMENT   OF   CORRECTION, et al., | 06 Civ. 1946 (LAK) (THK)        |
| Defendants.                                      |                                          |

-------------------------------------------------------------------------x

Pursuant to Local Rule 56.1 of the Civil Rules of United States District Court for the Southern District of New York, defendant, the City of New York ("City defendant")[1] submits this Statement of Material Facts as to which it contends there are no genuine issues to be tried:

A.     **Preliminary Facts**

1.     Plaintiff, a former correction officer with the New York City Department of Correction ("DOC"), identifies herself as an individual who suffers from a disability.  See Plaintiff's Complaint, dated February 28, 2006 ("Compl.") Exhibit "1."

2.     Plaintiff alleges that the DOC denied her a reasonable accommodation and placed her on disability retirement on account of her knee injury because the DOC has a

---

[1] By Order dated By Order dated October 11, 2006, the Honorable Lewis A. Kaplan dismissed all claims against the Department of Correction.  See Exhibit "3" to the Walker-Diallo Declaration ("Walker-Diallo Decl.").  By Order dated, May 9, 2007, Judge Kaplan dismissed all claims against Joan Codrington.  The Office of the Corporation Counsel does not represent Dr. Robert Duca.  See Exhibit "7" to the Walker-Diallo Decl.

custom, policy or practice of discriminating against individuals with knee injuries in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.[2]

       3.      Plaintiff also asserts disability discrimination claims under New York State and City Human Rights Laws.  See id.

**B.**    **Background.**

       4.      On or about November 14, 1996, plaintiff began working for the DOC as a correction officer.  See Compl. ¶ 10.

       5.      DOC informed plaintiff that inmate contact was part of her routine job duties and responsibilities.  See Plaintiff's Deposition Transcript ("Pl. Dep. Tr.") 37:17-19, Exhibit "2" to the Walker-Diallo Decl.

       6.      While at work on February 11, 2003, plaintiff alleges that she injured her left knee when she hit it on a metal post.  See Compl. ¶ 11; Pl. Dep. Tr. 47:14-16, Exhibit "2."

       7.      After her alleged knee injury, plaintiff worked in her capacity as a correction officer on full duty for nearly eighteen months.  See Compl. ¶ 13-16, Exhibit "1" to the Walker-Diallo Decl.

       8.      However, on July 26, 2004, plaintiff alleges that she experienced pain in her knee, the same knee that she allegedly injured in February 2003.  See id. at ¶ 15.

       9.      Plaintiff asserts that the pain prevented her from reporting to work.  See id. at ¶ 16.   As per the DOC's Rules and Regulations, plaintiff contacted the Health

---

[2] Judge Kaplan's October 11, 2006 order dismissed all federal claims against the City Defendant, except plaintiff's Equal Protection claim under 42 U.S.C. § 1983 and plaintiff's claim for attorney's fees under 42 U.S.C. § 1988.

Management Division ("H.M.D.") to report in sick.  See id; See also Directive 2262R, Sick Leave Regulations for Members of the Uniformed Force, Exhibit "A."[3]

10.    H.M.D. is responsible for enforcing the DOC's sick leave rules and regulations.  See id. at page 1, (II)(A)(1).  Once an employee is out of work on sick leave for more than thirty days, he or she is deemed on indefinite sick leave status and must visit H.M.D. so that the DOC can monitor the employee's medical status.  See id. at page 3, (III)(A)(6).  The employee's medical doctor must also submit documentation informing H.M.D. of the employee's medical condition and when the doctor expects the employee to be able to return to full duty.  See id. at page 9, III(G)(2).

11.    Although a correction officer may request a reasonable accommodation on account of a disability, he or she must be able to perform the essential functions of his or her position, which includes inmate contact.  See Directive 2232R, Reasonable Accommodation, Page 7, (V) Step III-IV, Exhibit "B" to the Lugo Decl.

12.    On August 6, 2004, plaintiff's personal medical doctor submitted documentation that plaintiff could not return to work.  See Pl. Dep. Tr. at 94:11-13, Exhibit "2" to the Walker-Diallo Decl.; plaintiff's medical documentation form, dated August 6, 2004, Exhibit "C" to the Lugo Decl.

13.    Beginning in August 2004, plaintiff reported to H.M.D. for scheduled doctors visits so that H.M.D. could review her medical documentation presented by her medical doctor concerning her ability to return to full duty.  See Pl. Dep. Tr. 61:24-62:4, Exhibit "2" to the Walker-Diallo Decl.

_____

[3] Annexed to the Rosa Lugo Declaration ("Lugo Decl.") dated December 13, 2007.

14.     From September 2004 to February 2005, plaintiff's doctor submitted documentation asserting that plaintiff was not fit to return to full duty. See plaintiff's September 2004 to February 2005 medical documentation forms, Exhibit "D" to the Lugo Decl.

15.     In February 2005, plaintiff underwent arthroscopic surgery on her left knee. See Pl. Dep. Tr. 26:12-14, Exhibit "2" to the Walker-Diallo Decl.

16.     Pursuant to Civil Service Law Section 71, an employee who does not return to work within one year of being out on indefinite sick leave will be medically separated from the DOC. See Letter from Assistant Commissioner Robert O'Leary to plaintiff and accompanying Certificate of Service, dated June 15, 2005, Exhibit "F" to the Lugo Decl. However, an employee can seek reinstatement within one year of being medically separated if he or she submits documentation from his or her personal doctor that he or she is fit to return to duty. See id.

17.     By letter dated June 15, 2005, the DOC informed plaintiff that she would be medically separated from her position on July 15, 2005, unless she submitted specific documentation that she was able to perform the full duties of her position. See id.

18.     However, on July 15, 2005, plaintiff's doctor informed the DOC that plaintiff would not be able to return to full duty because she was scheduled to undergo knee surgery. See plaintiff's medical documentation form, Exhibit "G" to the Lugo Decl.

19.     Since plaintiff was out indefinite sick leave since July 2004, plaintiff was required to return to full duty within one year.

20.     On August 10, 2005, plaintiff's doctor once again informed the DOC that plaintiff was unable to return to full duty because she was still waiting to undergo knee surgery.

See plaintiff's medical documentation form, dated August 10, 2005, Exhibit "H" to the Lugo Decl.

21.     Plaintiff did not seek reinstatement nor did she submit documentation that she was able to return to full duty as a correction officer.  See Pl. Dep. Tr. 86:7-21, Exhibit "2" to the Walker-Diallo Decl.

22.     Since plaintiff did not return to work by July 15, 2005, she was placed on disability retirement effective August 15, 2005.  See Letter from Assistant Commissioner Alan Vengersky to plaintiff, dated August 11, 2005, Exhibit "I" to the Lugo Decl.

23.     Plaintiff commenced this action on or about March 13, 2006 alleging violations of several federal and state constitutional and statutory laws.  See Compl., Exhibit "1." to the Walker-Diallo Decl.

## C.     **Procedural History**

24.     On July 5, 2006, defendants, the City of New York, the New York City Department of Correction, and Joan Codrington moved to dismiss plaintiff's claims.

25.     By Order dated October 11, 2006, the Honorable Lewis A. Kaplan dismissed the DOC as a defendant, and dismissed a majority of plaintiff's claims against the City of New York and Ms. Codrington ("City Defendants").  See Order dated October 11, 2006, Exhibit "3" to the Walker-Diallo Decl.

26.     By letter dated October 31, 2006, City Defendants respectfully requested that Judge Kaplan dismiss plaintiff's pendant state claims, as City Defendants believed that Judge Kaplan had dismissed all of plaintiff's federal claims.  See Letter dated October 31, 2006, Exhibit "4" to the Walker-Diallo Decl.

27.     On November 2, 2006, Judge Kaplan endorsed City Defendants letter dated October 31, 2006 and ordered that City defendants could "make any appropriate motion." See Order dated November 2, 2006, Exhibit "5" to the Walker-Diallo Decl.

28.     On November 22, 2006, defendants, City Defendants moved to dismiss plaintiff's State and City law claims on the grounds that the Court did not have pendant jurisdiction concerning these claims since City Defendants believed that all of plaintiff's federal claims had been dismissed.

29.     By Order dated January 30, 2007, Judge Kaplan ordered that he had not dismissed plaintiff's Section 1983 and Section 1988 claims against the City.  See Order dated January 30, 2007, Exhibit "6" to the Walker-Diallo Decl.

30.     On March 22, 2007, City defendants moved to dismiss plaintiff's Section 1983, Section 1988 claims, and all claims against Joan Codrington.

31.     By Order dated May 9, 2007, Judge Kaplan dismissed all claims against Joan Codrington but denied City defendants' motion to dismiss concerning plaintiff's Section 1983 claim and Section 1988 claim.  In rendering his decision, Judge Kaplan noted that:

> there is nothing in the Complaint, save conclusory allegations, that even remotely approaches the standard [concerning a claim of disability discrimination under the Equal Protection Clause] except the allegation [] that the DOC had a policy of refusing to accommodate persons who have had knee replacements and that plaintiff instead had been placed on disability retirement.

32.     See Order dated May 9, 2007, Exhibit "7" to the Walker-Diallo Decl.

**D.     Plaintiff's Discrimination Claims**

33.     Although plaintiff asserts that she can perform all the duties of a correction officer, she admits that she requires a "non-running position" within the DOC. Compl. ¶ 40, Exhibit "1" to the Walker-Diallo Decl.

34.     Plaintiff also testified that she did not request a reasonable accommodation on the basis of the knee injury nor did she ask her union to request a reasonable accommodation on her behalf. See Pl. Dep. Tr. 86:22-87:24, Exhibit "2" to the Walker-Diallo Decl.

35.     While plaintiff testified that correction officers who had knee injuries were allegedly forced to return to work, she did not know whether or not these individuals submitted medical documentation informing the DOC that they were able to return to full duty. See id. at 123:23-124:3.

36.     Plaintiff also testified that other correction officers with physical injuries were not allowed to work in office areas ("non-running positions") as a permanent assignment but were placed in their regular post assignment. See id. at 87:25-88:4.  Plaintiff did not know whether any such officer submitted medical documentation that they were fit to return to duty.

37.     At the time that plaintiff was placed on disability retirement, plaintiff's doctor had not submitted any documentation providing that she was able to perform the essential functions of her job with or without a reasonable accommodation.  See Exhibits "G" and "H" to the Lugo Decl.

38.     The only basis that plaintiff has for believing that she was discriminated against on account of her knee injury is because some unidentified individual from her "union," not the DOC or the City defendant, reportedly told her that the DOC would not accommodate her

on the basis of her knee injury.  <u>See</u> Pl. Dep. Tr. at 109:25, Exhibit "1" to the Walker-Diallo

Decl.

Dated:      New York, New York
            December 13, 2007

                              **MICHAEL A. CARDOZO**
                              Corporation Counsel of the
                                City of New York
                              Attorney for City Defendant
                              100 Church Street, Room 2-140
                              New York, New York 10007
                              Telephone: (212) 788-0868
                              Email: cwalker@law.nyc.gov


              By:     _____
                              Carolyn Walker-Diallo
                              Assistant Corporation Counsel


TO:     LEEDS MORELLI & BROWN, P.C.
        Attorneys for Plaintiffs
        Old Country Road, Suite 347
        Carle Place, NY  11514
        Attn:  Thomas Anthony Ricotta, Esq.